IN the MATTER OF DISCIPLINARY
PROCEEDINGS AGAINST Stanley T.
PELECKY, Attorney at Law.

Supreme Court

*No. 85–2236–D. Submitted on briefs February 3, 1988.—
Decided March 14, 1988.*

(Also reported in 420 N.W.2d 53.)

For the appellant and cross-respondent, Board of Attorneys Professional Responsibility, there was a brief by *Robert G. Krohn,* Janesville.

For the respondent and cross-appellant, there was a brief by *Stanley T. Pelecky,* Brookfield.

PER CURIAM. *Attorney disciplinary proceeding; attorney's license revoked.*

This is an appeal and cross-appeal from the referee's recommendation that the license of Stanley

T. Pelecky to practice law be suspended for three years as discipline for misconduct consisting of misuse of client funds, conversion of client funds to his own use, failure to maintain records of client funds and provide appropriate accounting thereof, misrepresentation, neglect of legal matters and failure to cooperate with the investigation into his conduct. Appealing from the referee's recommendation for discipline, the Board of Attorneys Professional Responsibility (Board) argued that Attorney Pelecky's misconduct warrants the revocation of his license. Attorney Pelecky cross-appealed from the referee's findings of fact and conclusions of law concerning his conduct and contended that several procedural errors were committed in the course of this proceeding. He asked that the matter be remanded to the referee for further proceedings.

The referee's findings are not clearly erroneous and we adopt them, together with the conclusions based on them. Attorney Pelecky's allegations of procedural improprieties are without merit and remand is unwarranted. We determine that the seriousness of Attorney Pelecky's misconduct warrants the revocation of his license to practice law. By failing to carry out his duties to his clients as legal representative and custodian of their funds, by placing his personal financial interests above theirs and by making misrepresentations to the court before which he practiced, Attorney Pelecky has demonstrated that he is unfit to practice law.

Attorney Pelecky was admitted to practice law in Wisconsin in 1964 and, until suspended from membership in the State Bar in January, 1985 for failure to comply with continuing legal education requirements, practiced in Milwaukee. He has not been the subject of

prior disciplinary proceedings. The referee is Attorney S. Michael Wilk.

The first of two matters in which Attorney Pelecky was found to have engaged in misconduct concerned his representation of a woman in a divorce proceeding. In May, 1983, prior to retaining him to represent her in that action, Linda Robarge turned over to Attorney Pelecky $14,000 from a joint savings account she had with her husband. The husband's attorney subsequently demanded that Attorney Pelecky release those funds and, when he failed to do so, commenced an action in circuit court alleging that Attorney Pelecky had converted the funds to his own use. In response to the husband's motion for summary judgment in that action, Attorney Pelecky filed an answer stating that the money was being held in his trust account and advising the judge that he would deposit it with the clerk of the court pending conclusion of the divorce action. Attorney Pelecky then deposited with the clerk a check written on his trust account in the amount of $15,320 but that check was not paid by reason of insufficient funds. The court then ordered judgment in favor of the husband and against Attorney Pelecky.

In response to the Board's initial inquiry into this matter, Attorney Pelecky wrote that the money was held by him in trust and was under his client's control at all times. After the Board referred the matter to the district professional responsibility committee, Ms. Robarge testified that at the end of March, 1985 Attorney Pelecky had given her two checks, each in the amount of $7000, but that both checks were dishonored, following which Attorney Pelecky gave her a cashier's check for $14,000.

In the course of its investigation the Board served Attorney Pelecky with a request for the production of trust account records. Attorney Pelecky responded that he was unable to comply with that request due to health problems and asked for an extension. In a subsequent discussion with Board staff, Attorney Pelecky stated that his record-keeping for his trust account had lapsed during the previous three years and that he had not maintained a running balance. Subsequently, Board staff met with Attorney Pelecky at his home to examine those trust account records he was able to produce. That examination disclosed that numerous checks and bank statements were missing.

The records showed that the account into which Attorney Pelecky had placed Ms. Robarge's $14,000 in 1983 was not his trust account but a personal account in a bank other than that in which he maintained his trust account. Subsequent to depositing that $14,000, Attorney Pelecky wrote three checks on the account, totaling approximately $13,800, for purposes unrelated to Ms. Robarge's matter and made one automated teller withdrawal in the amount of $100, the purpose of which was not discovered.

It was learned that Attorney Pelecky kept no independent records of the location of the Robarge funds. Moreover, no deposits into or withdrawals from his trust account were noted on check stubs and checks were written on the account when there were insufficient funds to pay them. In addition, Attorney Pelecky commingled his mother's social security payments with client funds in his trust account and paid out of that account her nursing bills and other expenses, in addition to withdrawing funds for himself.

The second matter considered in this proceeding concerned Attorney Pelecky's representation of a couple, Mr. and Mrs. Hubert, in the purchase and management of a rental property in 1979. The Huberts retained Attorney Pelecky to represent them in the purchase and to manage the property, including collecting rent, handling upkeep, making mortgage payments, providing accounting to the owners, disbursing profits to them, communicating with the lender, tenants and tax authorities and, ultimately, assisting the couple in selling the property. Although he argued that, after the purchase, he was acting merely as a friend, the referee found the relationship between Attorney Pelecky and the Huberts to be that of attorney and client.

In December, 1984 the Huberts sent Attorney Pelecky $10,000 to prepay a portion of principal on the mortgage. Attorney Pelecky acknowledged receipt of that money but admitted that he did not pay it to the mortgagee and was unable to account for the disbursement of those funds. He took the $10,000 check to his bank, deposited $8500 of it into his trust account and took the remaining $1500 in cash. He made no explanation as to the use of the $1500. At the time of the deposit, his trust account's balance was $85.52; in January, 1985, he wrote a check on that account in the amount of approximately $12,000 to an attorney in a matter unrelated to the Huberts, thereby overdrawing the account.

During 1982, 1983 and 1984 the mortgagee wrote to the borrowers in care of Attorney Pelecky informing them that mortgage payments were in arrears. In August, 1984 the mortgagee demanded full payment of the loan. A foreclosure action was commenced; when no answer was filed, default judgment was

granted and the property was sold to the mortgagee at a sheriff's sale. Throughout this time, Attorney Pelecky failed to notify the Huberts of any of the 15 letters he had received from the mortgagee between April, 1982 and August, 1984. He admitted that he had received notices from the mortgagee concerning the foreclosure action and had not told the Huberts that the action had been commenced. Attorney Pelecky also had refused to tell the mortgagee where the Huberts were and misrepresented their whereabouts.

After the foreclosure, Attorney Pelecky received letters from the Huberts asking for an updated accounting and urging him to try to sell the property. Attorney Pelecky ignored those letters. The Huberts eventually learned of the foreclosure after they contacted another attorney to investigate the problems they were having communicating with Attorney Pelecky.

On the basis of his conduct in these matters, the referee concluded that Attorney Pelecky failed to preserve the identity of client funds, in violation of SCR 20.50(1) (1986), failed to deposit client funds into a trust account and commingled client funds with his own, in violation of SCR 11.05, failed to maintain complete records of client funds coming into his possession and render appropriate accounting to the clients, in violation of SCR 20.50(2)(c) (1986), and converted client funds to his own use and misrepresented that he held client funds in his trust account, in violation of SCR 20.04(4) (1986). He also neglected legal matters, in violation of SCR 20.32(3) (1986), caused prejudice and damage to the interests of clients, in violation of SCR 20.35(1)(c) (1986), and failed to cooperate with the Board in its investigation of his misconduct, in violation of SCR 22.07(2).

As discipline for this misconduct, the referee recommended that Attorney Pelecky's license to practice law be suspended for three years and that, prior to the expiration of that suspension, he be required to present written evidence satisfactory to the court from acceptable mental health professionals certifying that he is able to resume the responsibilities of a lawyer. The referee also recommended that Attorney Pelecky be required to make restitution to the Huberts in the amount of $10,000 plus interest calculated at the legal rate from December 18, 1984 and that the he be required to pay the costs of this proceeding.

In his brief in the cross-appeal, Attorney Pelecky raised several procedural issues. First, he contended that his motion for summary judgment in the disciplinary proceeding should have been granted. He also argued that the referee had abused his discretion when he permitted the Board to amend its original complaint, when he refused to reschedule a pretrial conference after Attorney Pelecky had failed to appear and when he denied Attorney Pelecky's request to continue the disciplinary hearing for a third day to enable him to present witnesses. None of these contentions has merit.

Likewise meritless are Attorney Pelecky's arguments in support of his contention that the Board failed to establish his misconduct by clear and convincing evidence. He argued that he had been holding Ms. Robarge's money pursuant to her instructions, that is, until the hearing in the divorce action was concluded. His inability to produce trust account records, he asserted, was the result of his having twice moved his office. In explanation of his failure to inform the Huberts of the impending foreclosure action or the actual filing of it, he asserted that he was

helping them by requiring the mortgagee either to find them and serve them with process or to publish a notice of the foreclosure action. In Attorney Pelecky's view, the resultant delay worked in the Huberts' favor.

In its appeal from the recommended discipline, the Board asserted that the facts disclose a significant pattern of unprofessional conduct involving misuse of client funds, neglect of legal matters and misrepresentation. This, the Board contended, warrants the revocation of Attorney Pelecky's license to practice law.

We agree. Misuse of client funds and conversion of those funds to an attorney's personal use constitute egregious unprofessional conduct. Attorney Pelecky violated the trust his clients had placed in him and put his interests above theirs, to their obvious detriment. Further, Attorney Pelecky misrepresented to a circuit court that he continued to hold client funds in trust, when he knew the facts to be otherwise. In addition, his failure to protect the Huberts' interests in the foreclosure matter caused them serious financial harm. Taken together, this misconduct calls for the revocation of his license to practice law. We also make a part of our disposition of this matter the requirement that Attorney Pelecky make reimbursement to the Huberts.

During the course of this proceeding, Attorney Pelecky claimed that his conduct was caused by exhaustion, lack of sleep and overwork as a result of his having had to spend much of his time caring for his elderly mother, who was seriously ill and debilitated from the summer of 1982 until her death in 1985. Also during that time, Attorney Pelecky's home was foreclosed and he was forced to move and place his attorney records in storage.

As an alternative disposition of this proceeding, in response to what he perceived to be a medical incapacity Attorney Pelecky had been suffering due to his mother's illness, the referee suggested that the matter be referred to the Board for initiation of medical incapacity proceedings. Referral is not appropriate for the reasons that the Board had not alleged that Attorney Pelecky was suffering from a medical incapacity, Attorney Pelecky insisted he was not medically incapacitated and there was no testimony or other evidence from health care providers concerning Attorney Pelecky's medical condition.

IT IS ORDERED that the license of Stanley T. Pelecky is revoked, effective the date of this order.

IT IS FURTHER ORDERED that within 60 days of the date of this order Stanley T. Pelecky make restitution to the Huberts as recommended by the referee and set forth in this opinion.

IT IS FURTHER ORDERED that within 120 days of the date of this order Stanley T. Pelecky pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding.

IT IS FURTHER ORDERED that Stanley T. Pelecky comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.